UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **VALERIE MCLEAN,** | ) | |
| | ) | |
| **Plaintiff, individually and on behalf of all others similarly situated.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No.:** |
| | ) | |
| **VOLKSWAGEN GROUP OF AMERICA, INC.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Valerie McLean ("Plaintiff"), tenders the following as her Complaint and Jury Demand against Defendant, Volkswagen Group of America, Inc. (hereinafter "Defendant" or "VW"), for injuries suffered as a proximate result of VW's fraudulent concealment of diesel engine vehicle emissions, individually and on behalf of all others similarly situated (the "Class"), as follows:

### I. INTRODUCTION

1.      Defendant Volkswagen, the world's largest automobile manufacturer, admitted on Sept. 22, 2015, that it installed "defeat devices" in approximately 11 million vehicles worldwide, in violation of U.S. and state emissions and environmental

standards.[1] The violations were concealed from consumers including Plaintiff, who only found out about the violations after VW admitted that it "screwed up" and was dishonest with the EPA and other agencies.[2] Meanwhile, the U.S. government, through the Environmental Protection Agency, has passed and enforced laws designed to protect its citizens from pollution and in particular, certain chemicals and agents known to cause disease in humans. Automobile manufacturers must abide by these federal laws and must adhere to EPA rules and regulations. This case arises because Defendant Volkswagen purposefully and intentionally breached the laws of the United States and the rules and regulations of the EPA by selling vehicles manufactured by its affiliates Volkswagen AG and Audi AG that purposefully evaded federal and state laws. As stated by Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health." Yet that is exactly what Volkswagen did in its 2009-20015 Volkswagen and Audi diesel vehicles.

2.      As detailed in the EPA's Notice of Violation ("NOV"), sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant Volkswagen in the United States detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. But otherwise, that is at all other times that the vehicle is running, the emissions controls are suppressed. This results in cars that meet emissions standards in the laboratory or state testing station, but during normal operation emit nitrogen oxides (NOx) at up to 40 times the standard allowed

---

[1] Charles Fleming, *Volkswagen Emissions Scandal Expands to 11 Million Vehicles*, L.A. Times, Sept. 22, 2015, available at http://www.latimes.com/business/autos/la-fi-vw-7.3-billion-emissions-scandal-20150922-story.html
[2] *Id.*

under United States laws and regulations. The software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act. According to the EPA, affected models include the following: Jetta, 2009 to 2015; Jetta SportWagen TDI, 2009 to 2014; Beetle, 2012 to 2015; Beetle Convertible, 2013 to 2015; Audi A3, 2010 to 2015; Golf, 2010 to 2015; Golf SportWagen TDI, 2015; and Passat, 2012 to 2015.

3.     NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with preexisting respiratory illness are at acute risk of health effects from these pollutants.

4.     The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control system during normal driving conditions, cannot be certified.

5.     By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions that were certified to EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

6.      Volkswagen has charged a substantial premium for the Affected Vehicles, ironically marketed by Volkswagen as "CleanDiesel." For example, for the 2015 Volkswagen Jetta, the base S model has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The CleanDiesel premium for the highest trim Jetta model is substantially higher: The highest level gas Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

7.      These premiums occur across all of the vehicles in which Volkswagen installed its "defeat device" for emissions testing, including the VW Jetta, VW Beetle, VW Golf, VW Passat and Audi A3.

8.      Volkswagen will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. As a result, even if Volkswagen is able to make Class members' Affected Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised. This will necessarily result in a diminution in value of every Affected Vehicle and it will cause owners to pay more for fuel while using their vehicles.

9.      As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles emit 40 times the allowed levels, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property. Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Affected Vehicles, they

4

would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did. Moreover, when and if Volkswagen recalls the Affected Vehicles and degrades the CleanDiesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiff and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased. Moreover, affected vehicles will be worth less in the marketplace because of their decrease in performance and efficiency.

10.     Plaintiff brings this action individually and on behalf of all other current and former owners or lessees of Affected Vehicles. Plaintiff seeks damages, injunctive relief, and equitable relief for the conduct of Volkswagen related to the "defeat device," as alleged in this complaint.

## II. JURISDICTION

11.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the Kentucky state law claims pursuant to 28 U.S.C. § 1367.

## III. VENUE

12. Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff McLean resides in this District, purchased her Affected Vehicle in this District, and Volkswagen has marketed, advertised, sold, and leased the Affected Vehicles within this District.

## IV. PARTIES

### A. Plaintiff Valerie McLean

13.    Plaintiff Valerie McLean is an individual residing in Covington, Newton County, Georgia. On June 20, 2015, Plaintiff purchased a new blue 4-cylinder 2015 Volkswagen Passat Clean Diesel from Stone Mountain Volkswagen, an authorized Volkswagen dealer located on Stone Mountain Highway in Snellville, Georgia, for the price of $26,000.00.

14.    Plaintiff purchased, and still owns, this vehicle. At the time of purchase, it had an advertised fuel efficiency of 40 miles per gallon in the city up to 42 miles per gallon on the highway. Unknown to Plaintiff, at the time she purchased her vehicle, it was equipped with an emissions control "defeat device" which caused her vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx. The use of the "defeat device" by Volkswagen has caused Plaintiff out-of-pocket loss; future attempted repairs, and diminished value of her vehicle. Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

15.    Plaintiff selected and ultimately purchased her vehicle, in part, because of the "CleanDiesel" system, as represented through advertisements and representations made by Volkswagen. Specifically, prior to his purchase of the vehicle, Plaintiff viewed advertisements regarding the CleanDiesel and a representative of Stone Mountain

Volkswagen made verbal representations about the CleanDiesel system to Plaintiff. She recalls that the advertisements and representations, also including vehicle reviews in Car & Driver and Consumer Reports magazines, touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the "defeat device" or that Volkswagen had purposefully falsified its certification of EPA compliance. Had Volkswagen disclosed that the CleanDiesel in his vehicle actually emitted 40 times the permitted levels of pollutants, including NOx, he would not have purchased his vehicle with the CleanDiesel engine, or would have paid less for the vehicle.

16.    Plaintiff has suffered an ascertainable loss as a result of Volkswagen's omissions and/or misrepresentations associated with the CleanDiesel engine system, including but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, and diminished value of his vehicle. Neither Volkswagen nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the "defeat device" and/or defective design of the CleanDiesel engine prior to purchase.

**B. Defendant**

17.    Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in all 50 states (including the District of Columbia) and is organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. It also maintains a registered agent in the State of Georgia located in Norcross, GA. At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Affected Vehicles

under the Volkswagen and Audi brand names throughout the United States. Volkswagen and/or its agents designed, manufactured, and installed the CleanDiesel engine systems in the Affected Vehicles, which included the "defeat device." Volkswagen also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

## V. TOLLING OF THE STATUTE OF LIMITATIONS

### A. Discovery Rule Tolling

18.    Class Members had no way of knowing about Volkswagen's deception with respect to its CleanDiesel engine system and "defeat device." It took federal EPA investigations to uncover Volkswagen's deception, which involved sophisticated software manipulation on Volkswagen's part. As reported by the *Los Angeles Times* on September 18, 2015, it took California Air Resources Board testing on a special dynamometer in a laboratory, open road testing using portable equipment, and the use of special testing devised by the Board to uncover Volkswagen's scheme and to detect how software on the engine's electronic control module was deceiving emissions certifications tests. Plainly, Volkswagen was intent on expressly hiding its behavior from regulators and consumers. This is the quintessential case for tolling.

19.    Within the time period of any applicable statutes of limitation, Plaintiff and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Volkswagen was concealing the conduct complained of herein and misrepresenting the Company's true position with respect to the emissions qualities of its vehicles.

20.     Plaintiff and members of the proposed Georgia Class did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Volkswagen had information in its possession about the existence of its sophisticated emissions scheme and that it opted to conceal that information, which was discovered by Plaintiff only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiff and other Class members have disclosed that Volkswagen valued profits over compliance with federal and state law, or the trust that Plaintiff and other Class members had placed in its representations, or that, necessarily, Volkswagen actively discouraged its personnel from raising or disclosing issues with regard to the true quality and quantity of the emissions, and the emissions software, of its vehicles, or of Volkswagen's emissions scheme.

21.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

**B. Fraudulent Concealment Tolling**

22.     All applicable statutes of limitation have also been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

23.     Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the subject vehicles were far worse than represented, and of its disregard of federal and state law, Volkswagen falsely represented that its vehicles

complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

**C. Estoppel**

24.     Volkswagen was under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of emissions from the vehicles at issue, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

25.     Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions, of the vehicles at issue.

26.     Volkswagen was also under a continuous duty to disclose to Plaintiff and Class members that it had engaged in the scheme complained of herein to evade federal and state emissions and clean air standards, and that it systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and clean air.

27.     Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## VI. CLASS ALLEGATIONS

28.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class ("The Kentucky Class"):

### The Georgia Class

All persons or entities in the State of Georgia who are current or former owners and/or lessees of an "Affected

Vehicle." Affected Vehicles include, without limitation: 2009-2015 VW Jetta; 2009-2015 VW Beetle; 2009-2015 VW Golf; 2014-2015 VW Passat; and 2009-2015 Audi A3.

29.    Excluded from the Class are individuals who have personal injury claims resulting from the "defeat device" in the CleanDiesel system. Also excluded from the Class are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

30.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

31.    This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

32.    Numerosity. Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are not less than hundreds of thousands of members of the Class, the precise number of Class members in Georgia is unknown to Plaintiff, but may be ascertained from Volkswagen's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

33.     Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a) Whether Volkswagen engaged in the conduct alleged herein;

b) Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

c) Whether the CleanDiesel engine system in the Affected Vehicles contains a defect in that it does not comply with US EPA requirements;

d) Whether the CleanDiesel engine systems in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

e) Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

f) Whether Volkswagen designed, manufactured, marketed, and distributed Affected Vehicles with a "defeat device";

g) Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h) Whether Plaintiff and the other Class members overpaid for their Affected Vehicles;

k) Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

l) Whether Plaintiff and the other Class members are entitled to damages and

other monetary relief and, if so, in what amount.

34.    Typicality: Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

35.    Adequacy: Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Classes he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and his counsel.

36.    Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2): Volkswagen has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

37.    Superiority: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for members of the proposed Georgia Class to individually seek redress for

Volkswagen's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
## FRAUD BY CONCEALMENT

38.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

39.     This claim is brought on behalf of the proposed Georgia Class.

40.     Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles. As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.

41.     Plaintiff and members of the proposed Georgia Class reasonably relied upon Volkswagen's false representations. They had no way of knowing that

Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiff and members of the proposed Georgia Class did not, and could not; unravel Volkswagen's deception on their own.

42.    Volkswagen concealed and suppressed material facts concerning its compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.

43.    Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and members of the proposed Georgia Class. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, and also because the representations played a significant role in the value of the vehicles. As Volkswagen knew, its customers, including Plaintiff and members of the proposed Georgia Class, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

44.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because

Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or members of the proposed Georgia Class. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Volkswagen represented to Plaintiff and members of the proposed Georgia Class that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

45.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and members of the proposed Georgia Class.

46.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and members of the proposed Georgia Class by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions scheme.

47.    Plaintiff and members of the proposed Georgia Class were unaware of the omitted material facts referenced herein, and they would not have acted as they did if

they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.

48.     Because of the concealment and/or suppression of the facts, Plaintiff and members of the proposed Georgia Class have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.

49.     The value of vehicles owned by Plaintiff and members of the proposed Kentucky Class has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to the vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles.

50. Accordingly, Volkswagen is liable to Plaintiff and members of the proposed Georgia Class for damages in an amount to be proven at trial.

51. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and members of the proposed Georgia Class, and the representations that Volkswagen made to them, in order to enrich Volkswagen.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

52.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

53.     Plaintiff brings this Count on behalf of members of the proposed Kentucky Class.

54.     Volkswagen is and was at all relevant times a merchant with respect to motor vehicles.

55.     A warranty that the Affected Vehicles were in merchantable condition was implied by law in the instant transaction when Plaintiff, and members of the proposed Georgia Class, purchased or leased their Affected Vehicles.

56.     These Affected Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Affected Vehicles are inherently defective in that they do not comply with federal and state emissions standards, rendering certain safety and emissions functions inoperative; and the CleanDiesel engine system was not adequately designed, manufactured, and tested.

57.     Volkswagen was provided notice of these issues by the investigations of the EPA and individual state regulators.

58.     Plaintiff and the other members of the proposed Georgia Class have had sufficient direct dealings with either Volkswagen or their agents (dealerships) to establish privity of contract between Plaintiff and the other Class members. Notwithstanding this, privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Volkswagen and its dealers;

specifically, they are the intended beneficiaries of Volkswagen's implied warranties. The dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiff's and the other Class members' Affected Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

59.     As a direct and proximate result of Volkswagen's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT III
## BREACH OF CONTRACT

60.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

61.     Plaintiff brings this Count on behalf of himself individually and on behalf of members of the proposed Georgia Class.

62.     Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiff and the other members of the proposed Georgia Class to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other members of the proposed Georgia Class would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the

CleanDiesel engine system and the "defeat device." Accordingly, Plaintiff and the other members of the proposed Georgia Class overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

63.    Each and every sale or lease of a Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design.

64.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and members of the proposed Georgia Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT IV
## FRAUD BY CONCEALMENT

65.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

66.    Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles. As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually

operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.

67.    Plaintiff and members of the proposed Georgia Class reasonably relied upon Volkswagen's false representations.

68.    Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and members of the proposed Georgia Class. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiff and members of the proposed Georgia Class, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

69.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the Affected Vehicles because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or

members of the proposed Georgia Class. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiff and members of the proposed Georgia Class that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

70.     Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and members of the proposed Georgia Class.

71.     On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and members of the proposed Georgia Class by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions scheme.

72.     Plaintiff and members of the proposed Georgia Class were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.

73.     Because of the concealment and/or suppression of the facts, Plaintiff and members of the proposed Georgia Class have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of millions of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies.

74.     Accordingly, Volkswagen is liable to Plaintiff and members of the proposed Georgia Class for damages in an amount to be proven at trial.

75.     Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and members of the proposed Georgia Class, and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT V**
**VIOLATION OF GEORIGA FAIR BUSINESS PRACTICE ACT**

76.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

77.     Defendants are liable to the Plaintiff and members of the proposed Georgia Class pursuant to the Georgia Fair Business Practice Act, O.C.G.A. 10-1-390, *et. seq.*

78.     Defendant and its agents were in the business of manufacturing, marketing, selling and leasing the Affected Vehicles mentioned in greater detail herein.

79.     Defendant and/or its agents designed, formulated, manufactured, assembled, prepared for sale, distributed, and/or sold the Affected Vehicles to Plaintiff and members of the proposed Georgia Class, which were in a defective condition and not suitable for the uses for which they were intended.

80.     Privity existed between Plaintiff and Defendant, and between members of the proposed Georgia Class and Defendant.

81.     Plaintiff and members of the proposed Georgia Class, while using, purchasing and leasing the Affected Vehicles in the usual and customary manner, suffered substantial losses and harms as described herein.

82.     As a direct and proximate result of Defendants' conduct, Plaintiff and members of the proposed Georgia Class are entitled to recover actual damages including but not limited to loss of value of their vehicles, and other equitable relief pursuant to O.C.G.A. 10-1-390, *et. seq.*

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the proposed Georgia Class, respectfully requests that the Court enter judgment in their favor and against Volkswagen, as follows:

A. Certification of the proposed Georgia Class, including appointment of Plaintiff's counsel as Class Counsel;

B. An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. Injunctive relief in the form of a recall or free replacement program;

D. Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

E. An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

F. An award of costs and attorneys' fees; and

G. Such other or further relief as may be appropriate.

Respectfully submitted,

**THE ORLANDO FIRM, P.C.**

*/s/ Roger W. Orlando*
Roger W. Orlando
315 W. Ponce de Leon
Suite 400
Decatur, GA 30030
T: (404) 373-1800
roger@orlandofirm.com
*Counsel for Plaintiff*